8436, 8457.    MEADOWS *v.* MASSEE & FELTON LUMBER COMPANY; and *vice versa.*

Under the evidence it was not error to grant a nonsuit.

DECIDED NOVEMBER 14, 1917.

Action for damages; from Bibb superior court—Judge Mathews. December 4, 1916.

*Wimberly & Wimberly, Hall & Grice, C. J. Bloch,* for plaintiff.

*Hardeman, Jones, Park & Johnston, Harry S. Strozier,* for defendant.

LUKE, J. Alf Meadows sued the Massee & Felton Lumber Company for damages for personal injuries, alleging substantially as follows: He was employed to assist in hauling logs from the woods of the defendant to a tramroad, and was placed in charge of two log teams and directed to go in certain woods and there haul certain logs; his duties were to "toggle" the logs to the tongue of the cart. The operation of toggling a log is performed thus: A two-wheel timber-cart pulled by steers is driven into position, straddling a log. The steers are unhitched and then rehitched by means of a chain to the end of the cart tongue, which is then raised to a vertical position; and when the tongue is thus raised, hooks suspended from the cart drop upon the log at the sides. The steers are thereupon driven forward, pulling the tongue down to a horizontal position, fastening the hooks securely in the

log, and at the same time raising the log from the ground. The front end of the log is then tied to the tongue by means of a toggling chain, the purpose of this being to hold the log securely in place while it is being hauled. The plaintiff was engaged in tying the log to the tongue when he was hurt. While he was doing this, some of the steers hitched to the tongue suddenly ceased pulling, the tongue shot upward, drawing the chain taut and catching his hand between the log and the chain. By reason of the injury thus inflicted, his hand had to be amputated. It was alleged that the defendant was negligent, in not providing adequate assistance; in not furnishing a longer cart tongue; in furnishing poorly trained and unruly steers; in failing to warn the plaintiff of the danger of a short tongue; and in the deficiency of the number of helpers and of proper steers. Upon the trial the plaintiff, who was the only witness, testified, among other things: "Nathan Holmes was in charge of that team; he was a good man. Nath was trying to hold the tongue down. I was trying to toggle the cart. Nath was driving the steers. There was no one standing at the head of the team at the time. John Lewis was trying to help hold the tongue. Nath and John were both on the tongue. Nath was driving, but he stepped back to help hold the tongue down. He left the team, and I reckon that was the reason it gave back; they [the steers] did not give back until he came where I was. There was nobody looking after the steers, nothing more than he [Nathan] was trying to holler at them. I knew these were new steers, and I knew that they were not well broke. I saw the steers give back; that was the reason that the tongue give back. When I hooked the chain round [the log], then the steers give back and let the tongue go. It went clean up, and the men turned it loose, and that caught the hook right through the knuckle and it went through my hand." At the conclusion of the evidence the court granted a nonsuit, and the plaintiff excepted.

The court did not err in granting a nonsuit. Park's Annotated Code, §§ 3129 and 3131; *Van Dyke* v. *Menlo Fruit Co.,* 129 *Ga.* 532 (59 S. E. 215); *Brown* v. *Rome Machine & Foundry Co.,* 5 *Ga. App.* 142 (62 S. E. 720).

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. Wade, C. J., and Jenkins, J., concur.*